EL PUEBLO, DEMANDANTE Y APELADO, *v.* ALCAIDE ET AL.,
ACUSADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Guayama
en causa por conspiración.

No. 1399.—Resuelto en marzo 15, 1921.

CONSPIRACIÓN—ACUSACIÓN INSUFICIENTE POR OMISIÓN DE ELEMENTOS ESENCIA-
LES.—La regla general con relación a una acusación por conspiración es que
deberán expresarse todos los hechos y circunstancias esenciales comprendidos
en la definición del ''delito,'' y que de omitirse cualquier elemento esencial
del delito tal omisión no puede ser suplida por el espíritu de la ley o por
deducción. El cargo debe hacerse directamente y no debe ser inductivo o
a manera de exposición.

ID.—SISTEMA PENAL DE PUERTO RICO—COMMON LAW.—En Puerto Rico como en
en las Cortes Federales no existen delitos a menos que estén expresamente
definidos por el estatuto. Ni en una ni en otra jurisdicción existen delitos
de ley común.

ID.—ACUSACIÓN INSUFICIENTE.—Una acusación por conspiración basada en el No.
4 del artículo 62 del Código Penal por haber sido defraudada una menor
en sus derechos como hija natural reconocida es fatalmente defectuosa si no
expresa en qué consisten los bienes de que iba a ser privada la menor por
virtud de la conspiración, pues no siempre la privación del derecho de fi-
liación es equivalente a la privación de bienes.

CONSPIRACIÓN PARA DEFRAUDAR PROPIEDAD—DERECHOS QUE NO CONSTITUYEN PRO-
PIEDAD.—A los fines del No. 4 del artículo 62 del Código Penal el derecho
de un hijo natural a llevar el apellido y a recibir alimentos del que lo re-
conoce no es un bien o propiedad. Y tampoco lo es el derecho a percibir
la porción hereditaria correspondiente mientras vive la persona que hizo el
reconocimiento.

CONSPIRACIÓN PARA PERVERTIR U OBSTRUIR LA JUSTICIA.—La imputación de que
los acusados conspiraron para conseguir corrupta e ilegalmente que la corte
de distrito declarara nulo el reconocimiento de hijo natural realizado en fa-
vor de una menor, debe regularse por los principios expuestos en el caso de
''El Pueblo v. Torregrosa,'' 24 D. P. R. 12, pues tal acto en sí no tiende a
pervertir y obstruir la justicia pública y la debida administración de justi-
cia como exige el No. 5 del artículo 62 del Código Penal, excepto, como se
dijo en dicho caso en el sentido general en que cualquier acto ilegal perver-
tiría la justicia pública.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Alvarez Nava y Domín-
guez, F. Soto Gras, M. Guerra y F. Cervoni.*

Abogados de la acusada María Morales: *Sres. E. Benítez
Castaño, A. R. Barceló y M. Benítez Flores.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta fué una causa por conspiración en la cual ciertos acusados fueron declarados culpables, e interpusieron recurso de apelación. De los varios errores que han sido alegados, el primero es que la acusación no imputa un delito público, cuestión que fué debidamente promovida en la corte sentenciadora mediante excepción perentoria. Debido a este error fundamental nos vemos obligados a revocar la sentencia y por tanto será innecesario examinar los demás errores alegados.

Antes de examinar la acusación en cuestión será conveniente primero considerar algunos de los principios generales aplicables a acusaciones o *"indictments"* por conspiración.

En el caso de *Pettibone* v. *United States,* 146 U. S. 197, que es por conspiración, la corte dijo:

"La regla general con relación a una acusación es que deberán expresarse todos los hechos y circunstancias esenciales comprendidos en la definición del 'delito', y que de omitirse cualquier elemento esencial del delito tal omisión no puede ser suplida por el espíritu de la ley o por deducción. El cargo debe hacerse directamente y no debe ser inductivo o a manera de exposición."

Este caso ha sido citado mucho y también al efecto de que la conspiración y no los actos manifiestos (*overt acts*) tendentes a su ejecución constituye la característica del delito. En este último sentido, por supuesto, prevalece el artículo 63 de nuestro estatuto el cual más adelante citamos. La sección 5440 de los Estatutos Revisados de los Estados Unidos que estaba envuelta en el caso *United States* v. *Pettibone,* y que es semejante al artículo 63, *supra,* ha sido interpretado en el caso *Hyde* v. *United States,* 225 U. S. 347, en el sentido de que es necesario el acto manifiesto (*overt act*) para que constituya un delito. Con esta restricción, el caso de Pettibone y los que en él se citan son autoridades al efecto de que la conspiración misma debe imputarse claramente.

Antes de que pueda ser castigado un hombre su caso debe estar clara e inequívocamente comprendido en el estatuto; *United States* v. *Brewer,* 139 U. S. 388; *United States* v. *Lacher,* 134 U. S. 628; *France* v. *United States,* 164 U. S. 683, donde se dijo:

"Si se alegara que el acto de estos demandantes en error está dentro del espíritu del estatuto la contestación debe ser que está tan fuera de su texto que el incluirlo sería legislar y no interpretar legislación."

Hemos discutido estos principios en el caso de *El Pueblo* v. *Torrellas,* 10 D. P. R. 542; *El Pueblo* v. *Torregrosa et al.,* 24 D. P. R. 12, y otros casos.

En Puerto Rico como en las Cortes Federales no existen delitos a menos que estén expresamente definidos por el estatuto. Ni en una ni en otra jurisdicción existen delitos de ley común. *United States* v. *Walsh,* 5 Dill. 58; *United States* v. *Britton,* 108 U. S. 199; *People* v. *Ruíz,* resuelto en enero 31, 1921; Código Penal, artículo 5.

La acusación consta de tres cargos, el primero de los cuales es como sigue:

"Que allá por los años de 1894 a 1898, Simón A. Alcaide, y María Morales, sostuvieron relaciones amorosas, viviendo en concubinato por varios años en el pueblo de Arroyo, en la Isla de Puerto Rico; que durante esas relaciones amorosas, y como fruto de las mismas, nació una niña en el citado pueblo de Arroyo, la que fué inscrita en el Registro Civil de dicho pueblo, el día 21 del mes de marzo del año 1898, bajo el nombre de María de los Dolores, como hija natural de María Morales.

"Que con posterioridad, o sea allá el día 3 de octubre del año 1900, Simón A. Alcaide, compareció ante el encargado del Registro Civil de Arroyo, y reconoció a María de los Dolores, como su hija natural, quedando así inscrita la citada niña como hija natural reconocida de Simón A. Alcaide y María Morales a virtud del acta de nacimiento y nota marginal, obrantes al folio 132 del tomo 4 de la sección de nacimientos, archivada en el Registro Civil de Arroyo, acta y nota marginal que copiada literalmente, dicen:

"'Número 26: María de los Dolores Morales en el pueblo de

Arroyo, Provincia de Puerto Rico, a las 9 de la mañana del día 21 del mes de marzo de 1898, ante don Pedro Massanet y Esteva, Juez Municipal y D. Miguel Jeannot, Secretario, compareció María Morales, natural de Maunabo, Provincia de Puerto Rico, de veinte y tres años de edad, de estado soltera, de profesión de su sexo, domiciliada en la calle del Sol, presentando con objeto de que se inscriba en el Registro Civil una niña y al efecto como madre natural de la niña declara: que dicha niña nació en la casa de la declarante el día 23 de diciembre último a las tres de la mañana: que es hija natural de la declarante, natural de Maunabo, Provincia de Puerto Rico, de 23 años, oficios los de su sexo y domiciliada en la calle del Sol: que es nieta por línea materna de Juan Morales, natural de Maunabo, ya difunto, y de Braulia Soto, natural de Maunabo, domiciliada en calle del Sol: y que a la expresada niña se le puso el nombre de María de los Dolores: todo lo cual presenciaron los testigos D. Adolfo Soto y Díaz, natural de este pueblo, de estado casado, mayor de edad, de oficio industrial y domiciliado en calle "Santa Teresa," y D. Ignacio Guillén, natural de España, mayor de edad, de oficio empleado, casado, y domiciliado en calle "Pescado:" leída íntegramente esta acta e invitadas todas las personas que deban suscribirla a que la leyeran por sí mismas, si así lo creían conveniente, se estampó en ella el sello del Juzgado Municipal y la firmaron el Sr. Juez, los testigos y no la declarante porque manifestó no saber hacerlo, a sus ruegos D. Zenón Cintrón, de esta vecindad y de todo ello como Secretario certifico: Pedro J. Massanet.—Zenón Cintrón. Adolfo Soto.—Ignacio Guillén.— Miguel Jeannot.

" 'Nota marginal.—En tres de octubre de 1900, siendo las diez de la mañana, ante don José García Salinas, Juez Municipal y don José Aponte y Hernández, compareció don Simón A. Alcaide Báez, natural de este pueblo, de treinta y cinco años de edad, soltero, propietario y domiciliado en la calle 'Morse' de esta localidad, y expuso: que la niña inscrita en la presente acta, María de los Dolores Morales, la reconoce como hija natural suya de conformidad con el Artículo 131 del Código Civil vigente, que son abuelos por línea paterna Don Antonio J. Alcaide y doña Stella Báez, natural el primero de Andalucía y la segunda de Arroyo, ambos difuntos, a todo lo cual declaró ante los testigos don Eugenio Cruz de Manattou y don Nazario Antonetti, mayores de edad y vecinos de este pueblo, solteros y empleados y firman con el declarante, luego del Sr. Juez

yo certifico: García Salinas.—S. A. Alcaide.—E. C. de Manattou.—
Nazario Antonetti.—José Aponte.'

''Que en varias ocasiones y en fecha anterior a la presentación
de esta acusación, Simón A. Alcaide con la intención y el propósito
de privar a su hija, la menor María de los Dolores, de sus derechos
como hija natural reconocida, trató de conseguir que se anulara el
reconocimiento que había hecho en 3 de octubre del año 1900, ante
el encargado del Registro Civil de Arroyo de la ya mencionada
María de los Dolores, le ofreció a María Morales, madre de María
de los Dolores, sumas de dinero para que accediera facilitar y poner
en práctica los medios para que se consiguiera la nulidad del acta
de reconocimiento; y que estas ofertas y proposiciones le fueron
hechas a María Morales, por conducto de Arturo G. López, Alberto
E. Vázquez y Rafael Cintrón Lastra, todos actuando como manda-
tarios de Simón Alcaide.

''Que posteriormente, o sea allá en el mes de junio de 1915, los
acusados Simón A. Alcaide, María Morales, Manuel A. Martínez
Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G.
López ilegal, corrupta y voluntariamente, y con intención fraudu-
lenta, conspiraron, se combinaron, se asociaron, se unieron y pu-
sieron de acuerdo para establecer ante el Tribunal del Distrito Ju
dicial de Guayama, P. R., un recurso con el fin de conseguir que el
citado Tribunal de Justicia dictara sentencia declarando que Simón
A. Alcaide no era el padre de María de los Dolores, y decretara
la nulidad del reconocimiento hecho por el citado Simón A. Al-
caide de su hija natural María de los Dolores, que con el fin y el
efecto de defraudar ilegalmente a María de los Dolores en sus de-
rechos de hija natural reconocida de Simón A. Alcaide, los citados
acusados, todos unidos y de acuerdo y con el fin y propósito de
persistir, continuar y llevar a cabo la conspiración, y el acuerdo
que todos juntos fraguaron, presentaron y radicaron en la Secre-
taría de la Corte de Distrito de Guayama en 30 de junio del año
de 1915, una demanda contra Simón A. Alcaide, suscrita y jurada
por María Morales, y suscrita también por su abogado Manuel A.
Martínez Dávila, en cuya demanda la citada María Morales, a nom-
bre y en representación de su hija, María de los Dolores, solicitaba
de la Corte de Distrito de Guayama que dictara sentencia declarando
que el demandado Simón A. Alcaide no era el padre de María de
los Dolores, y solicitando, asimismo, la nulidad del acta de recono-
cimiento a que tantas veces se ha hecho referencia; y el día 2 de
julio del mismo año de 1915, Simón A. Alcaide, representado por

su abogado R. Cintrón Lastra, y de acuerdo con éste y con María Morales, Arturo G. López, Alberto E. Vázquez y Manuel A. Martínez Dávila, presentó y radicó en la Secretaría de la Corte de Distrito de Guayama, una contestación allanándose a la demanda de referencia, aceptando como ciertas todas las alegaciones de la misma y consintiendo que la corte dictara sentencia de acuerdo con la súplica de la demanda. La demanda presentada lee como sigue:

" 'En la Corte de Distrito de Guayama, P. R.—María Morales, en representación de su menor hija María de los Dolores, demandante, vs. Simón Antonio Alcaide, demandado. Civil No____ Sobre impugnación de un reconocimiento de un hijo natural.—Demanda.— Hon. Corte:—Comparece la demandante por su abogado y bajo juramento alega:—1. Que es madre con patria potestad sobre su menor hija María de los Dolores Morales y vecina de Guayama y el demandado es mayor de edad y también vecino de Guayama.— II. Que llevando relaciones íntimas la madre de la menor demandante, María Morales, que es soltera, con cierto hombre también soltero y que no es preciso designar ahora por su nombre y viviendo en concubinato durante algún tiempo, fué concebida la menor demandante que nació el día 23 de diciembre de 1897 y fué inscrita por la madre de dicha menor como su hija natural en el Registro Civil de Arroyo, P. R., el día 21 de marzo de 1898.—III. Que a los siete meses de concebida la menor demandante y durante el embarazo de la madre de dicha menor, conoció la madre de la demandante al demandado y emprendieron relaciones amorosas.—IV. Que el demandado Simón Antonio Alcaide, generosamente el día 3 de octubre de 1900 acudió ante el Secretario del Ayuntamiento de Arroyo y por medio de una nota marginal en la inscripción de nacimiento, reconoció por su hija, sabiendo que no lo era y sin consentimiento de la madre de la menor demandante, a la niña María de los Dolores Morales, la cual no es hija del demandado, quien la reconoció por benevolencia y cariño a dicha menor, que nació viviendo el demandado con la madre de dicha menor.—Ese reconocimiento no fué aprobado judicialmente.—V. La demandante tiene motivos sobrados para asegurar que otro y no el demandado es el padre de la dicha menor y que sólo por cariño a ella y a la madre fué reconocida por el demandado. Por tanto, la demandante a la corte suplica, que en mérito de lo expuesto se sirva, en su día, dictar sentencia declarando que el demandado Simón Antonio Alcaide no es el padre de la menor demandante y en su virtud decretar la nulidad del reconocimiento hecho por dicho demandado de la menor

demandante en el Registro Civil de Arroyo, P. R., ordenando que se cancele dicho reconocimiento e imponiendo costas y desembolsos al demandado. Guayama, junio 30 de 1915.—Atentamente, María Morales.—Manuel A. Martínez, abogado de la demandante.-

" 'Jurat.—Yo, María Morales, bajo juramento declaro:—Que soy mayor de edad vecina de Guayama; que soy la madre de la demandante y que la demanda anteriormente firmada por mi abogado ha sido redactada por él de acuerdo con mis instrucciones; que dicha demanda me ha sido leída por dicho abogado y los hechos en ella consignados son ciertos, constándome todos de propio conocimiento.— Guayama, junio 30, 1915.—María Morales, declarante.—Jurada y suscrita ante mí hoy día 30 de junio de 1915, por María Morales, soltera, mayor de edad y vecina de Guayama, a quien conozco personalmente.—Guayama, fecha *ut-supra.*—E. S. Mestre, Secretario de la Corte de Distrito. Guayama, P. R.—Presentada y radicada en mi oficina, hoy 30 de junio de 1915.—Mestre, Secretario."

"La siguiente es una copia de la contestación presentada por Simón A. Alcaide, por conducto de su abogado R. Cintrón Lastra:

" 'En la Corte de Distrito del Distrito Judicial de Guayama, P. R.—María Morales en representación de su menor hija María de los Dolores, demandantes *vs.* Simón Antonio Alcaide.—Sobre Nulidad de un Reconocimiento etc.—Contestación a la demanda.— Hon. corte:—Comparece ahora el demandado don Simón Antonio Alcaide, por conducto de su abogado Rafael Cintrón Lastra, y respetuosamente alega:—que con fecha 30 de junio del año actual ha sido notificado de la demanda arriba titulada.—Que los hechos alegados en dicha demanda son ciertos, pues realmente la menor demandante María de los Dolores, no es hija del demandado, quien la reconoció por un acto de generosidad y benevolencia debido al afecto que el demandado tuvo a la madre de dicha menor con quien sostuvo relaciones amorosas desde dos o tres meses antes de nacer dicha menor hasta cuatro o cinco años después.—Que el demandado nunca ha tenido hijos ni aún en su matrimonio legítimo. Que el demandado, en tal virtud, acepta todos y cada uno de los hechos de la demanda.—Por tanto, el demandado consiente en que la corte dicte sentencia en la presente acción, de acuerdo con la súplica de la demanda, siempre que se le releve del pago de costas y desembolsos.—Guayama, P. R., 2 de julio de 1915.—Respetuosamente, R. Cintrón Lastra, abogado del demandado.—Presentada en mi oficina hoy 3 de julio de 1915.—Mestre, Secretario.—Notificado con co-

pia hoy 3 de julio de 1915; Guayama, P. R., 3 de julio de 1915.—Manuel A. Martínez Dávila, abogado de la demandante.'

''Que al tiempo de presentarse y radicarse en la Secretaría de la Corte de Distrito de Guayama, los precedentes documentos, o sea la demanda y la contestación ya transcrita, era sabido por los acusados Simón A. Alcaide, Manuel A. Martínez Dávila, María Morales, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G. López, que las alegaciones que se hacían en los citados documentos de que María de los Dolores no es hija natural reconocida de Simón A. Alcaide y sí de otro hombre, eran falsas y contrarias a la verdad, por cuanto la verdad es que la citada María de los Dolores es hija natural reconocida de Simón A. Alcaide, y no de otro hombre como fué alegado falsamente en estos documentos, todo lo cual era conocido por todos y cada uno de los acusados; y la citada demanda y escrito de contestación fueron hechos y presentados en la Secretaría del Tribunal del Distrito de Guayama en ayuda y para llevar a efecto el propósito de dicha ilegal y maliciosa combinación, concertada, como antes se ha dicho, con el fin e intención de defraudar a María de los Dolores como hija natural reconocida del referido Simón A. Alcaide.

''Por tanto, el Fiscal bajo juramento acusa y dice:—Que Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Arturo G. López, Rafael Cintrón Lastra y Alberto E. Vázquez, en la ciudad de Guayama, dentro del Distrito Judicial de Guayama, P. R. y en 30 de junio de 1915, ilegal, fraudulenta y criminalmente, conspiraron, se combinaron, se asociaron y pusieron de acuerdo para cometer un delito contra las Leyes de Puerto Rico a saber:—Corruptamente y por medio de alegaciones falsas y fraudulentas y maliciosas pretensiones y representaciones de la manera y forma antes dichas, defraudar a una menor llamada María de los Dolores en sus derechos civiles como hija natural reconocida y heredera de Simón A. Alcaide; todo lo cual es contrario a la forma, eficacia y propósito de la Ley para tal caso hecha y prevista, y contra la paz y dignidad de El Pueblo de Puerto Rico.''

La teoría de este cargo y como ha sido expresada bajo juramento por el Fiscal de Distrito, *supra,* es una conspiración para privar a María de los Dolores de sus derechos como hija natural reconocida. Aunque en él se habla de la presentación de un pleito falso es solamente como un medio

o manera por el cual la conspiración había de llevarse a cabo o sea para privar a una menor llamada María de los Dolores de sus derechos civiles como hija natural reconocida y heredera de Simón Alcaide. En dos o tres sitios más de dicho cargo se expresa de tal modo el objeto o propósito de la conspiración. La lectura del cargo excluye cualquiera otra teoría y es necesariamente aquélla por la cual los acusados fueron a juicio. Puede decirse incidentalmente que al discutirse la excepción perentoria el fiscal de distrito dijo que el primer cargo era un proceso por virtud del párrafo 4 del artículo 62 del Código Penal. Transcribimos los artículos 62 y 63 del Código Penal, los cuales son como sigue:

"Artículo 62.—Si dos o más personas conspiraren (1) para cometer algún crimen; (2) para acusar falsa y maliciosamente a otra persona de algún crimen, o conseguir que se denuncie o arreste a otra por algún crimen; (3) para promover o sostener algún pleito, causa o proceso infundadamente; (4) para estafar y defraudar a alguna persona en sus bienes por medios en sí criminales, u obtener dinero o bienes valiéndose del engaño; y (5) para cometer algún acto perjudicial a la salud pública, o encaminado a pervertir u obstruir la justicia o la debida administración de las leyes, tales personas serán penadas con cárcel por un término máximo de un año, o multa máxima de mil dollars o ambas penas.

"Artículo 63.—Ningún convenio, excepto para cometer delito grave (*felony*) contra alguna persona, o para cometer el delito de incendiar o asaltar moradas, constituye conspiración, a no concurrir algún acto para llevarlo a cabo, por uno o más de los convenidos."

El único párrafo del artículo 62 que se acerca a la descripción del acto delictivo de privar a una hija natural reconocida de sus derechos civiles es dicho párrafo cuarto. Considerado aisladamente y sin referencia a las autoridades en particular creemos que dicho cuarto párrafo se refiere claramente a bienes o dinero como tales, conceptos que a veces son equivalentes a derechos civiles pero que otras tienen un alcance mucho más limitado. Uno tiene derecho a bienes o

dinero pero tiene también muchos otros derechos.   Los derechos civiles pueden conducir directamente a bienes o dinero. La privación de los derechos civiles a veces conduce necesariamente a la privación de bienes pero si la privación de derechos civiles lleva necesariamente a la de bienes o dinero, los bienes o dinero deben describirse en el cargo.

Los bienes en particular de los cuales la hija natural reconocida iba a ser privada debieron haberse expresado en la acusación.   Hace tiempo, en el caso *United States* v. *Cruikshank,* 92 U. S. 542, que es uno de los principales casos en la jurisprudencia criminal, la corte dijo:

"Se hace consistir el delito en la confabulación ilegal con intención de privar del goce de cualquier derecho conferido o garantido por la constitución, etc.   Todos los derechos no son de tal modo concedidos o garantidos.   El que uno lo esté o no es cuestión que ha de ser resuelta por la corte y no por el fiscal.   La acusación por tanto debe expresar los particulares para informar a la corte así como al acusado."

Véase el caso de *McKenna* v. *United States,* 127 Fed. 91 y otras citas de ese caso principal.

Entendemos que este principio es aplicable a este caso, pero de suponerse que el privar a una hija natural reconocida de su condición (*status*) traería como consecuencia la privación de sus derechos de propiedad, consideremos lo que pueden o podrían ser estos derechos de propiedad.   El artículo 195 del Código Civil como fué enmendado por la Ley de marzo 9, 1911, prescribe lo siguiente:

"Artículo 195.—El hijo natural tiene derecho—
    "1. A llevar el apellido del que lo reconoce.
    "2. A recibir alimentos del mismo.
    "3. A percibir la porción hereditaria que determina este Código."

El derecho a llevar el apellido del padre claramente no es una propiedad.   La herencia "determinada en este código," no puede ser considerada como propiedad porque

nadie es heredero del que vive y expectativas de esta clase no se consideran como bienes.

En cuanto al derecho a los alimentos, esto se define más específicamente en el título octavo del Código Civil. El artículo 217 prescribe lo siguiente:

"La obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona que tuviere derecho a percibirlos; pero no se abonarán sino desde la fecha en que se interponga la demanda."

En este caso no se demostró que la obligación de Alcaide existiera.

El artículo 219 determina entre otras cosas que "no es renunciable ni trasmisible a un tercero el derecho a los alimentos." El artículo 220 dispone que la obligación de dar alimentos también cesará cuando el alimentista puede ejercer una profesión, oficio o industria, o haya adquirido un destino o mejorado de fortuna, de suerte que no sea necesaria la pensión alimenticia para su subsistencia.

Los derechos civiles de un hijo natural reconocido muy dudosamente se refieren al derecho a los alimentos cuando dicho derecho se restringe de tal modo y en todo caso ese derecho no es "propiedad" dentro del significado del párrafo 4 del artículo 62 del Código Penal.

El artículo 559 del Código Penal prescribe:

 *        *        *        *        *        *        *

"8. La voz 'propiedad' incluye las dos clases de propiedad, o sea, raíces y muebles.   *   *   *

"10. La frase *personal property* (bienes muebles) incluye dinero, mercancías, semovientes, cosas cuya posesión puede pedirse en juicio, y comprobantes de deudas."

Estas definiciones parecen excluir claramente el derecho a los alimentos según el significado de la palabra "bienes," como se define en el artículo 62 del Código Penal, puesto que toda la propiedad mueble aquí expresada es susceptible de

ser transmitida, condición que niega el derecho a los alimentos.

*Gleason* v. *Thaw,* 236 U. S. 558, fué un caso en que un abogado presentó en un procedimiento de bancarrota una reclamación por servicios profesionales, alegando que los servicios prestados constituían propiedad dentro del significado del párrafo 2 No. 17 de la Ley de Quiebras que exceptúa las obligaciones por obtener propiedad mediante falsas simulaciones de la exoneración general de una sentencia en bancarrota. La corte dice:

"El límite exacto del concepto propiedad proporcionaría un tema especialmente a propósito para una disquisición ampliadora y filosófica; pero la Ley de Quiebras es una cosa prosaica cuyo objeto es la pronta aplicación a los asuntos diarios de negocio práctico, y al interpretar sus términos estamos limitados a su aceptación usual en ese campo de investigación."

Y en la página 561 la corte se expresa así:

"Creemos que el Congreso nunca tuvo la intención de que la propiedad en el párrafo que consideramos comprendiera los servicios profesionales. A lo sumo, denota algo sujeto al dominio, traspaso o posesión y disfrute exclusivo, los que pueden quedar comprendidos en el dominio y control de una corte por medio de algún proceso reconocido. Esta es ciertamente toda la extensión del significado de la palabra como se emplea en el lenguaje y negocios corrientes y tiene la misma significación en muchos escritos preparados cuidadosamente. Las constituciones de muchos estados prescriben que toda propiedad será tasada, pero nunca se ha supuesto que esto es aplicable a los servicios profesionales."

La corte cita con aprobación la opinión del Juez Gray, de la corte inferior, en el caso de *Gleason* v. *Thaw,* 185 Fed. Rep. 347. En ese caso la corte dijo lo siguiente:

"Que la palabra 'propiedad' es un término general (*nomen generalissimum*), como alega el peticionario, no ha de negarse, pero tampoco ha de negarse que su significación puede ser restringida no solamente por aplicación de la máxima, *noscitur a sociis,* sino por el fin con que

se usa, o por su uso evidente como palabra de arte, o por su uso en un sentido técnico. La misma generalidad de la palabra requiere restricción, de acuerdo con las circunstancias en que se use. En algunas sentencias así como en algunos *obiter dicta,* se ha hecho comprender en la palabra 'propiedad' por medio de un adorno retórico todo lo tangible o intangible que se le pueda atribuir valor. Existen, sin embargo, bien consideradas decisiones de las más altas autoridades en las cuales desde el punto de vista del caso en particular, los derechos y libertades personales han de incluirse dentro del significado de la palabra 'propiedad.' Así pues, el derecho de un hombre a trabajar, a emprender un negocio lícito o ejercer una profesión legítima, no se le puede quitar o restringir por ninguna ley del estado que no esté comprendida en sus facultades de reglamentación (*police powers*), considerándose tal acto como una privación de la propiedad dentro de la prohibición constitucional, federal o del Estado. Así pues, una combinación o conspiración para destruir o impedir a una persona seguir su negocio dentro de la protección de la Ley, puede ser impedida por constituir una invasión amenazante del derecho de propiedad. Tales casos, sin embargo, están lejos de expresar que los servicios realmente suministrados de acuerdo con un supuesto contrato constituyen por sí propiedad que ha sido fraudulentamente quitada de la posesión de aquél que ha prestado el servicio dentro del alcance de esa palabra como se emplea en el artículo de la Ley de Bancarrota que ahora consideramos. Una cosa es decir que el derecho de un hombre a prestar o cobrar por sus servicios de acuerdo con su propio gusto puede, para los fines de su protección, considerarse como una especie de propiedad, y otra cosa es afirmar que los servicios ya prestados por una persona a otra han de considerarse como propiedad para aumentar o cambiar los medios corrientes por virtud de los cuales se pueda cobrar la deuda a la persona a quien dichos servicios se le prestaron. El derecho a trabajar en cualquier ocupación o profesión futuras puede considerarse como un derecho de propiedad para el fin de protección, pero no existe ningún derecho en cuanto al trabajo o servicios ya préstados, y no hay nada que proteger excepto el derecho a recobrar la debida compensación por ellos. En el segundo caso nada se ha traspasado de la posesión del que ha prestado los servicios al otro a quien se prestaron los servicios. No debemos permitir nosotros que por una artificiosa casuística verbal se confunda un concepto del derecho a trabajar o prestar servicios con el servicio mismo cuando ha sido prestado. El derecho a trabajar o prestar un servicio es una cosa y el servicio mismo es otra muy distinta.''

Y al final del caso dice la corte:

"Ciertamente que bajo ninguna administración debida o estricta de la Ley Criminal podía acusarse a ninguna persona de acuerdo con el lenguaje general para obtener propiedad bajo falsas simulaciones por el fundamento de que los servicios cuya prestación se ha hecho mediante falsa representación, constituyan propiedad dentro del significado de la ley."

Una discusión algo semejante respecto a lo que es propiedad puede hallarse en el caso de *Fruth* v. *Board of Affairs.* L. R. A. 1915 C, 982; 84 S. E. 105, donde la corte después de una discusión general cita de otro caso lo siguiente:

"La propiedad. pues, en un objeto determinado, se compone de ciertos elementos constitucionales, a saber: el derecho ilimitado al uso, goce y disposición de ese objeto."

Véase también el caso de *Harvey Coal Company* v. *Dillon,* 6 L. R. A. (N. S.) 631.

En el caso de *Green* v. *Edwards,* R. I., 77 Atl. 188, se resolvió que la mera expectación o posibilidad mientras el causante vivía, no era una propiedad dentro del significado de la constitución federal de que nadie debe ser privado de su propiedad sin el debido proceso de ley.

*Billingsley* v. *St. Louis, etc.,* 107, S. W. 173 fué un caso en el cual se resolvió que los servicios domésticos de la esposa y su compañía matrimonial son puramente personales para el esposo y no poseen ninguno de los atributos de propiedad.

Véase también nuestra decisión en el caso de *Fajardo Sugar Company* v. *Tesorero de Puerto Rico,* 22 D. P. R. 320, en el cual citando el caso de *Gleason* v. *Thaw, supra,* resolvimos que los créditos no eran necesariamente propiedad de acuerdo con un precepto que exigía que toda la propiedad fuese tasada.

El fiscal cita varios casos para demostrar que puede considerarse un interés futuro. Todos estos casos eran al efecto

de que la esposa tenía tal interés en un derecho de viudedad, que podía sostener una acción para anular un traspaso fraudulento hecho por su esposo con el fin de anular tal derecho de viudedad. En uno de ellos, o sea, el de *Hatch* v. *Rollins*, 59 S. W. 232, la acción de la esposa era por su derecho de viudedad adquirido en propiedades que el esposo había traspasado inmediatamente antes de su matrimonio. Un derecho de viudedad puede ser considerado como propiedad y quizás es susceptible de ser traspasado. Ciertamente que nadie en los Estados Unidos compraría propiedad a menos que la esposa compareciera como parte en la escritura. Pero ya que se considere un derecho de viudedad como propiedad o no, nos sentimos obligados a declarar que un derecho a alimentos no es propiedad dentro del significado del Código Penal.

El cargo segundo es como sigue:

"Que en o cerca del 30 de junio del año 1915 y en la Ciudad de Guayama, que forma parte y está comprendida dentro del Distrito Judicial de la Corte de Distrito de Guayama, P. R., los acusados Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Arturo G. López, Rafael Cintrón Lastra y Alberto E. Vázquez, ilegal y voluntariamente y con intención fraudulenta, conspiraron, se combinaron, se asociaron, se unieron y pusieron de acuerdo para cometer un acto tendente a pervertir y obstruir la justicia pública y la debida administración de Ley, en la mencionada Corte de Distrito de Guayama, de la siguiente manera:—En la fecha alegada, o sea en o cerca del día 30 de junio del año 1915, los acusados Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Alberto E. Vázquez y Arturo G. López y Rafael Cintrón Lastra, ilegal, maliciosa y voluntariamente, conspiraron, se asociaron y pusieron de acuerdo para conseguir por medios corruptos e ilegales, que el Tribunal de Distrito del Distrito Judicial de Guayama declarara nulo el reconocimiento hecho por Simón A. Alcaide en 3 de octubre del año 1900 ante el encargado del Registro Civil de Arroyo, P. R., declarando que María de los Dolores era su hija natural, y al efecto y con el fin y propósito de persistir, continuar y llevar a cabo la conspiración, María Morales suscribió la demanda que se pasa a transcribir, de acuerdo y en combinación con Manuel A. Martínez Dávila, su abogado, quien también suscribió la

citada demanda, y con Simón A. Alcaide, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G. López, quienes estaban asociados, unidos y puestos de acuerdo para obstruir y pervertir la justicia pública y la debida administración de ley, en la Corte de Distrito de Guayama:

"En la Corte de Distrito de Guayama, P. R.—María Morales, en representación de su menor hija María de los Dolores, demandante, v. Simón Antonio Alcaide, demandado.—Civil No.—Sobre: Impugnación de un reconocimiento de un hijo natural.—Demanda.—Hon. Corte: Comparece la demandante por su abogado y bajo juramento alega:—Que es madre con patria potestad sobre su menor hija María de los Dolores Morales y vecina de Guayama y el demandado es mayor de edad y también vecino de Guayama.—III.   Que llevando relaciones íntimas la madre de la menor demandante María Morales, que es soltera, con cierto hombre, también soltero y que no es preciso designar ahora por su nombre y viviendo ambos en concubinato durante algún tiempo, fué concebida la menor demandante que nació el día 23 de diciembre de 1897 y la cual fué inscrita por la madre de dicha menor como su hija natural en el Registro Civil de Arroyo, P. R., el día 21 de marzo de 1898.—Que a los siete meses de concebida la menor demandante y durante el embarazado de la madre de dicha menor, conoció la madre de la demandante al demandado y emprendieron relaciones amorosas.—IV.   Que el demandado Simón Antonio Alcaide, generosamente el día 3 de octubre de 1900 acudió ante el Secretario del ayuntamiento de Arroyo y por medio de una nota marginal en la inscripción de nacimiento, reconoció por su hija, sabiendo que no lo era y sin consentimiento de la madre de la menor demandante, a la niña María de los Dolores Morales, la cual no es hija del demandado, quien la reconoció por benevolencia y cariño a dicha menor, que nació viviendo el demandado con la madre de dicha menor.—Ese reconocimiento no fué aprobado judicialmente.—V.   La demandante tiene motivos sobrados para asegurar que otro y no el demandado es el padre de dicha menor y que sólo por cariño a ella y a la madre fué reconocida por el demandado.   Por tanto, la demandante a la corte suplica, que en mérito de lo expuesto, se sirva, en su día, dictar sentencia declarando que el demandado Simón Antonio Alcaide no es el padre de la menor demandante y en su virtud decretar la nulidad del reconocimiento hecho por dicho demandado de la menor demandante en el Registro Civil de Arroyo, P. R., ordenando que se cancele dicho reconocimiento e imponiendo costas y desembolsos al demandado.—

Guayama, junio 30 de 1915.—Atentamente, María Morales.—Manuel A. Martínez, abogado de la demandante.

"'Jurat.—Yo, María Morales, bajo juramento declaro:—Que soy mayor de edad y vecina de Guayama; que soy la madre de la demandante y que la demanda anteriormente firmada por mi abogado ha sido redactada por él, de acuerdo con mis instrucciones; que dicha demanda me ha sido leída por mi abogado y los hechos en ella consignados son ciertos constándome todos de propios conocimiento.—Guayama, junio 30 de 1915.—María Morales, declarante.—Jurada y suscrita ante mí hoy día 30 de junio de 1915, por María Morales, soltera, mayor de edad y vecina de Guayama, a quien conozco personalmente. —Guayama, fecha *ut-supra.*—E. S. Mestre, Secretario de la Corte de Distrito, Guayama, P. R.—Presentada y radicada en mi oficina hoy 30 de junio de 1915.—Mestre, Secretario.'

"Que el día 2 de julio del año 1915 Simón A. Alcaide representado por su abogado R. Cintrón Lastra y de acuerdo y en combinación con éste, y con María Morales, Arturo G .López, Alberto E. Vázquez, Manuel A. Martínez Dávila, presentó y radicó en la Secretaría de la Corte de Distrito de Guayama, un escrito de contestación, allanándose a la demanda, pidiendo que se dictara sentencia de acuerdo con la súplica de la misma.—Este escrito de contestación, dice:

"En la Corte de Distrito del Distrito Judicial de Guayama, P. R.— María Morales en representación de su menor hija María de los Dolores Morales, demandante, v. Simón Antonio Alcaide.—Sobre: Nulidad de un reconocimiento, etc.—Contestación a la demanda.—Hon. Corte:—Comparece ahora el demandado, don Simón Antonio Alcaide, y por conducto de su abogado Rafael Cintrón Lastra, y respetuosamente alega: que con fecha 30 de junio del año actual ha sido notificado de la demanda arriba titulada. Que los hechos alegados en dicha demanda son ciertos, pues realmente la menor demandante María .de de los Dolores, no es hija del demandado, quien la reconoció por un acto de generosidad y benevolencia, debido al afecto que el demandado tuvo a la madre de dicha menor con quien sostuvo relaciones amorosas desde dos o tres meses antes de nacer dicha menor hasta cuatro o cinco años después. Que el demandado nunca ha tenido hijos, ni aún en su matrimonio legítimo.—Que el demandado, en tal virtud, acepta todos y cada uno de los hechos de la demanda. Por tanto, el demandado consiente que la corte dicte sentencia en la presente acción, de acuerdo con la súplica de la demanda, siempre que se le releve del pago de costas y desembolsos.—Guayama, P. R., 2 de julio de 1915.— Respetuosamente, R. Cintrón Lastra, abogado del demandado.—Pre-

sentada en mi oficina hoy 3 de julio de 1915.—Mestre, Secretario. Notificado con copia, hoy 3 de julio de 1915.—Guayama, P. R., 3 de julio de 1915.—M. A. Martínez, abogado de la demandante.'

"Que al tiempo de hacerse la demanda a que se ha hecho referencia, y al presentarse y radicarse dicho documento en la Secretaría de la Corte de Distrito de Guayama, lo mismo que al hacerse y presentarse el escrito en que Simón A. Alcaide solicitó se dictase sentencia de acuerdo con la súplica de la demanda, los acusados Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Alberto E. Vázquez y Arturo G. López, sabían y les constaba que las alegaciones que se hacían en los citados documentos de que María de los Dolores no es hija natural de Simón A. Alcaide y sí de otro hombre, eran falsas e inciertas, contrarias a la verdad; y que los citados acusados hicieron esas alegaciones falsas y presentaron a la corte esos documentos conteniendo las citadas alegaciones, con el fin y el propósito de obtener por estos medios fraudulentos e ilegales que Simón A. Alcaide quedara exento y libre de la responsabilidad y deberes que tiene para con María de los Dolores como hija natural reconocida suya, y además para obtener por medio del fraude, y del engaño, habiendo aceptado el demandado Simón A. Alcaide, en combinación con los demás acusados, todas las alegaciones de la demanda, que la Corte de Distrito de Guayama dictara sentencia concediendo lo que en dicha demanda se solicitaba, o sea declarando que Simón A. Alcaide no es el padre de María de los Dolores y decretando la nulidad del reconocimiento de la menor María Morales, digo, María de los Dolores, hecho por Simón A. Alcaide el día 3 de octubre de 1900, en el Registro Civil de Arroyo.—Que los acusados mencionados Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G. López ilegal y fraudulentamente conspiraron, se combinaron y asociaron para engañar en la forma ya indicada al Tribunal de Distrito de Guayama, con el fin de pervertir y obstruir la justicia pública y le debida administración de la ley en dicho tribunal, obteniendo, por medios ilegales, corruptos y fraudulentos, una sentencia que habría de privar a María de los Dolores de sus derechos como hija natural reconocida de Simón A. Alcaide.—Por tanto, el Fiscal, bajo juramento acusa y dice: que Simón A. Alcaide, María Morales, Manuel A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G. López en la ciudad de Guayama, capitalidad del Distrito Judicial de Guayama, P. R., y en'la fecha alegada, ilegal, corrupta, fraudulenta y criminalmente conspiraron, se combinaron, se asociaron y pusieron de acuerdo para cometer un delito contra las

Leyes de Puerto Rico, a saber: Corruptamente y por medio de alegaciones falsas y fraudulentas, y maliciosas pretensiones y representaciones de la manera y forma antes dicha, pervertir y obstruir la justicia pública y la debida administración de justicia en la mencionada Corte de Distrito de Guayama, Distrito Judicial del mismo nombre, todo lo cual es contrario a la forma, eficacia y propósito de la Ley para tal caso hecha y prevista, y contra la paz y dignidad de El Pueblo de Puerto Rico.''

Este cargo debe regularse por los principios expuestos en el caso de *El Pueblo* v. *Torregrosa, supra,* toda vez que los actos imputados no son de la naturaleza de pervertir la justicia pública excepto como se dijo en ese caso, en el sentido general en que cualquier acto ilegal pervertiría la justicia pública.

El caso de *People* v. *Daniels,* 105 Cal. 262, citado por el fiscal, fué uno en el cual la acusación se formuló claramente de acuerdo con el párrafo 3 del artículo 62, o sea para establecer un proceso infundado mientras el fiscal admite como creemos que debe admitir que esta es una acusación por virtud del párrafo 2 del artículo 62, *supra.*

El tercer cargo es como sigue:

''Simón A. Alcaide, Rafael Cintrón Lastra, Manuel A. Martínez, María Morales, Arturo G. López y Alberto E. Vázquez, allá por el día 30 de junio de 1915, en la ciudad de Guayama, dentro de la jurisdicción de la Corte de Distrito de Guayama, P. R., ilegal, corrupta, fraudulenta y criminalmente conspiraron, se combinaron, se asociaron y pusieron de acuerdo para cometer un delito en contra de El Pueblo de Puerto Rico, como sigue:—Dichos acusados, entonces y allí, ilegal, corrupta, fraudulenta y criminalmente conspiraron, se combinaron, se asociaron y pusieron de acuerdo con el propósito de perjudicar a María de los Dolores Alcaide y Morales, con objeto de beneficiarse ellos mismos, de la siguiente manera: El citado Simón A. Alcaide con el objeto de obtener y asegurar a su favor inmunidad para siempre de su responsabilidad para con María de los Dolores Alcaide y Morales, reconocida como hija natural suya, por las acciones que pudieran ser entabladas por ella en reclamación de sus derechos y propiedad a virtud de dicho reconocimiento: la citada María Morales, por remuneración de la suma de ocho mil dollars que le había de entregar

Simón A. Alcaide, y los citados Rafael Cintrón Lastra, Manuel A.
Martínez Dávila, Alberto E. Vázquez y Arturo G. López, por remu-
neración también de cierta suma de dinero, cuya cantidad exacta es
desconocida por el Fiscal, ilegal, corrupta, fraudulenta y criminal-
mente, redactaron e hicieron que fuera redactado, escrito y firmado,
en la fecha y lugar antes mencionado, con el propósito de llevar a
efecto dicha ilegal y maliciosa conspiración, formada con el fin y
propósito ya dichos, un documento que fué presentado y radicado en
la Secretaría de la Corte de Distrito de Guayama, P. R., y que co-
piado literalmente dice:

" 'En la Corte de Distrito de Guayama, P. R.   María Morales en
representación de su menor hija María de los Dolores, demandante, v.
Simón Antonio Alcaide, demandado.—Civil No.—Sobre: Impugna-
ción de un reconocimiento de un hijo natural.—Demanda.—Hon.
Corte:—Comparece la demandante por su abogado y bajo juramento
alega: 1.   Que es madre con patria potestad sobre su menor hija
María de los Dolores Morales, y vecina de Guayama, y el demandado
es mayor de edad y también vecino de Guayama.—2.   Que llevando
relaciones íntimas la madre de la menor demandante, María Morales,
que es soltera, con cierto hombre, también soltero y que no es preciso
designar ahora por su nombre viviendo ambos en concubinato durante
algún tiempo, fué concebida la menor demandante, que nació el día
23 de diciembre de 1897, y la cual fué inscrita por la madre de dicha
menor como su hija natural, en el Registro Civil de Arroyo, P. R., el
día 21 de marzo de 1898.—3.   Que a los siete meses de concebida la
menor demandante y durante el embarazo de la madre de dicha menor,
conoció la madre de la demandante al demandado y emprendieron re-
laciones amorosas.—4.   Que el demandado Simón Antonio Alcaide,
generosamente el día 3 de octubre de 1900 acudió ante el Secretario
del ayuntamiento de Arroyo y por medio de una nota marginal en la
inscripción de nacimiento, reconoció por su hija, sabiendo que no lo
era sin consentimiento de la madre de la menor demandante, a la
niña María de los Dolores Morales, la cual no es hija del demandado,
quien la reconoció por benevolencia y cariño a dicha menor que nació
viviendo el demandado con la madre de dicha menor.   Ese reconoci-
miento no fué aprobado judicialmente.—5.   Que la demandante tiene
motivos sobrados para asegurar que otro y no el demandado es el
padre de dicha menor que sólo por cariño a ella y a la madre fué reco-
nocida por el demandado.—Por tanto, la demandante a la corte su-
plica, que en mérito de lo expuesto, se sirva, en su día, dictar sen-
tencia declarando que el demandado Simón Antonio Alcaide no es el

padre de la menor demandante y en su virtud decretar la nulidad del reconocimiento hecho por dicho demandado de la menor demandante en el Registro Civil de Arroyo, P. R., ordenando que se cancele dicho reconocimiento e imponiendo costas y desembolsos al demandado.—Guayama, junio 30 de 1915.—Atentamente, María Morales.— Manuel A. Martínez, abogado de la demandante.

" 'Jurat.—Yo, María Morales, bajo juramento declaro: que soy mayor de edad y vecina de Guayama; que soy la madre de la demandante y que la demanda anteriormente firmada por mi abogado ha sido redactada por él de acuerdo con mis instrucciones; que dicha demanda me ha sido leída por mi abogado y los hechos en ella consignados son ciertos, constándome todos de propio conocimiento. Guayama, junio 30 de 1915.—María Morales, declarante.—Jurada y suscrita ante mí hoy día 30 de junio de 1915.—Por María Morales, soltera, mayor de edad y vecina de Guayama, a quien conozco personalmente.—Guayama, fecha *ut-supra.*—E. S. Mestre, Secretario de la Corte de Distrito de Guayama, P. R.—Presentado y radicado en mi oficina hoy día 30 de junio de 1915.—Mestre, Secretario.'

" 'Y el día 2 de julio del año de 1915 Simón A. Alcaide, representado por su abogado Rafael Cintrón Lastra, y de acuerdo con éste y con María Morales, Arturo G. López, Alberto E. Vázquez y Manuel A. Martínez Dávila, presentó y radicó en la Secretaría de la Corte de Distrito de Guayama, una contestación allanándose a la demanda de referencia, aceptando como ciertas todas las alegaciones de la misma, y consintiendo que la corte dictara sentencia de acuerdo con la súplica de la demanda, y cuya contestación se transcribe a continuación:

" 'En la Corte de Distrito del Distrito Judicial de Guayama, P. R.—María Morales, en representación de su menor hija María de los Dolores Morales, demandante, v. Simón Antonio Alcaide.—Sobre: Nulidad de un reconocimiento, etc.—Contestación a la demanda.— Hon. Corte:—Comparece ahora el demandado, don Simón Antonio Alcaide, por conducto de su abogado Rafael Cintrón Lastra y respetuosamente alega:—Que con fecha 30 de junio del año actual ha sido notificado de la demanda arriba titulada. Que los hechos alegados en dicha demanda son ciertos, pues realmente la menor demandante María de los Dolores, no es hija del demandado, quien la reconoció por un acto de generosidad y benevolencia, debido al afecto que el demandado tuvo a la madre de dicha menor, con quien sostuvo relaciones amorosas desde dos o tres meses antes de nacer dicha menor hasta cuatro o cinco años después. Que el demandado nunca

ha tenido hijos, ni aún en su matrimonio legítimo. Que el demandado, en tal virtud, acepta todos y cada uno de los hechos de la demanda. Por tanto, el demandado consiente en que la corte dicte sentencia en la presente acción, de acuerdo con la súplica de la demanda, siempre que se le releve del pago de costas y desembolsos. Guayama, P. R., 2 de julio de 1915.—Respetuosamente, R. Cintrón Lastra, abogado del demandado.—Presentada en mi oficina hoy 3 de julio de 1915.—Mestre, Secretario.—Notificado con copia hoy día 3 de julio de 1915.—Guayama, P. R., 3 de julio de 1915.—M. A. Martínez, abogado de la demandante.'

"Que al tiempo de redactarse y firmarse dichos documentos así como al tiempo de presentarse y radicarse los mismos en la Secretaría de la Corte de Distrito de Guayama, los citados Simón A. Alcaide, María Morales, M. A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G. López, sabían que María de los Dolores Alcaide y Morales había sido reconocida por Simón A. Alcaide, como hija natural suya, el día 3 de octubre del año 1900, y sabían, asimismo que las alegaciones contenidas en la demanda fueron hechas por María Morales no libre y espontáneamente, sino en razón a que debía percibir por hacerlas, la suma de ocho mil dollars sin cuya entrega de dinero no hubiera nunca suscrito y jurado dicha demanda la susodicha María Morales; que los mencionados acusados sabían, además, que era falso y contrario a la verdad, que la menor María de los Dolores fuera concebida por su madre María Morales siete meses antes de empezar ésta sus relaciones amorosas con Simón A. Alcaide, tal como se expresa en la demanda, sino que por el contrario dicha María de los Dolores fué concebida durante el período de tiempo en que María Morales sostenía relaciones amorosas con dicho Simón A. Alcaide; que del mismo modo era conocido por los acusados la falsedad que se afirma en dicha demanda de que María de los Dolores fué reconocida por Simón A. Alcaide como hija natural suya, sabiendo que no lo era, y que la reconoció sólo por benevolencia y cariño, siendo lo cierto que Simón A. Alcaide reconoció a dicha menor María de los Dolores como hija natural suya, bajo la convicción y en la creencia de que en realidad era su hija natural; que que también sabían los acusados mencionados, al tiempo de redactarse, firmarse y radicarse dichos documentos, que la alegación hecha en la contestación a la demanda afirmando que Simón A. Alcaide sostuvo relaciones amorosas desde dos o tres meses antes de nacer María de los Dolores hasta cuatro o cinco años después, era incierta y contraria a la verdad, por cuanto lo cierto es que las relaciones de

Simón A. Alcaide y María Morales comenzaron tres o cuatro años antes del nacimiento de la referida María de los Dolores, y que dichos documentos conteniendo alegaciones falsas fueron hechos, suscritos y presentados a la Corte de Distrito de Guayama con el propósito de llevar a efecto dicha ilegal y maliciosa combinación y conspiración formada como antes se ha dicho, con el fin e intención de obtener y asegurar a favor del referido Simón A. Alcaide la inmunidad para siempre de su responsabilidad para con María de los Dolores Alcaide y Morales, a quien había reconocido como hija natural suya, defraudando a ésta en los derechos que de tal reconocimiento se derivan; y con el fin y propósito de obtener la suma de ocho mil dollars, la acusada María Morales y una suma de dinero cuya ascendencia exacta es desconocida por el Fiscal, los otros acusados Rafael Cintrón Lastra, Manuel A. Martínez Dávila, Alberto E. Vázquez y Arturo G. López. Por tanto, el Fiscal, bajo juramento acusa y dice: Que Simón A. Alcaide, María Morales, Alberto E. Vázquez, Manuel A. Martínez Dávila, Rafael Cintrón Lastra y Arturo G. López, en el Distrito Judicial de Guayama, P. R., allá por el día 30 de junio de 1915, ilegal, fraudulenta, maliciosa y criminalmente, conspiraron, se combinaron, se asociaron y pusieron de acuerdo para obtener y asegurar a favor del referido Simón A. Alcaide inmunidad para siempre de su responsabilidad como padre de la menor María de los Dolores Alcaide, reconocida por él como su hija natural defraudando así a dicha María de los Dolores en sus derechos nacidos al amparo de dicho reconocimiento, y para obtener la suma de ocho mil dólares la acusada María Morales y una cantidad de dinero desconocida por el Fiscal los acusados Manuel A. Martínez Dávila, Rafael Cintrón Lastra, Alberto E. Vázquez y Arturo G. López, todo lo cual es contrario a la Ley para tal caso hecha y prevista y contra la paz y dignidad de 'El Pueblo de Puerto Rico.'—Fiscal del Distrito.

"La acusación que antecede está basada en el testimonio de testigos examinados por mí bajo juramento, creyendo solemnemente que existe justa causa para presentarla al tribunal.—(f) S. Vivaldi Pacheco, Fiscal del Distrito.—Suscrita y jurada ante mí, hoy día 29 de junio de 1916 en Guayama, P. R.—(f) E. S. Mestre, Secretario Corte de Distrito de Guayama, P. R.—Presentada en corte abierta y radicada y archivada en Secretaría hoy 29 de junio de 1916.—(f) E. S. Mestre, Secretario Corte Distrito."

Este es, según admite el fiscal, también un cargo bajo el apartado 4 del artículo 62 del Código Penal y lo mismo que

el primer cargo depende de la cuestión de privar de sus bienes a la hija natural reconocida, y por tanto dicho tercer cargo queda sujeto a la misma objeción.

Puesto que ningún cargo en la acusación está claramente comprendido dentro de ninguna de las subdivisiones del artículo 62 del Código Penal, la sentencia debe ser revocada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison firmó conforme con la sentencia.